

CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington DE 19899
TEL (302) 658 9141
FAX (302) 658 5614

1990 M Street, NW, Suite 800
Washington DC 20036
TEL (202) 331 7111
FAX (202) 293 6229

WEB www.cblhlaw.com

GERARD M. O'ROURKE
Partner

TEL (302) 888-6208
FAX (302) 658 5614
EMAIL gorourke@cblh.com
REPLY TO Wilmington Office

August 22, 2005

**VIA ELECTRONIC FILING**
The Honorable Judge Kent A. Jordan
U.S. District Court, District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Room 6325, Lockbox 10
Wilmington, DE 19801

    Re:    Commissariate l'Energie Atomique ("CEA") v. Samsung et al.
           Consolidated Civil Action No. 03-484(KAJ)

Dear Judge Jordan:

    Defendant AU Optronics ("AUO") submits this letter in opposition to CEA's motions to compel AUO to answer interrogatories in addition to the 25 (including subparts) that CEA has propounded and to provide a date certain by which AUO will complete its production of technical documents. AUO and Samsung Electronics Co., Ltd. ("Samsung") submit this letter jointly in opposition to CEA's motion to compel AUO and Samsung to produce documents relating to their worldwide sales and revenue for "VA-mode" TFT-LCD products.

    Other defendants may want to be heard at the hearing on the issues involved here. For example, AUO and Sharp, the two parties primarily responsible for negotiating the Scheduling Order in this consolidated case, have independently taken nearly identical positions on the number of interrogatories that CEA has served. Sharp respectfully requests that it be heard at the hearing on this issue and, to the extent necessary, on the worldwide sales issue.

    I.    CEA's Motion to Compel AUO to Answer All Interrogatories Including Subparts Should
          Be Denied.

    Initially, AUO sought to avoid burdening the Court with this dispute and offered a compromise to CEA. (Ex. A). CEA rejected that proposal and demanded near complete capitulation by AUO. (Ex. B). As a result, this motion ensued.

    CEA's motion to compel AUO to answer all interrogatories (including subparts) that it has propounded should be denied because: (1) Rule 33(a) and the Scheduling Order in this case limit the parties to 25 interrogatories (including subparts); (2) CEA is clearly over the 25 interrogatory limit; (3) CEA has not demonstrated a particularized need for additional interrogatories in excess of 25; (4) CEA has not exhausted other avenues of discovery; (5) CEA is attempting to use the interrogatories it has

LAW OFFICES
CONNOLLY BOVE LODGE & HUTZ LLP
The Honorable Judge Kent A. Jordan
August 22, 2005
Page 2

served including its table as a substitute for, *inter alia*, a deposition of AUO's technical witnesses; and (6) CEA has discovery into AUO's contentions as best AUO can presently give them (thus, there is no prejudice to CEA in denying its motion). CEA's table has independent defects as well.

CEA has grossly misrepresented the facts concerning AUO's production of technical documents. In particular, CEA is using its table showing numerous "blank" entries for many modules to impugn AUO. However, AUO informed CEA during its meet and confer on this issue that AUO believes the table contained at least 6 "twisted nematic" modules (TN modules) that CEA does not accuse of infringement (M170EN04, M170EN05, M170EN06, M170EN08, M170ES05, and M190EN04). Moreover, AUO informed CEA that there were two model numbers that it believed did not exist: M260XW02 and T210XW01. CEA recently wrote AUO and admitted that its table is wrong, and that it can tell by a simple review of AUO's documents and the public record that certain modules are TN. CEA does not dispute AUO's representation about the remaining modules, and has requested confirmation from AUO of that fact. (Ex. C). We have yet to meet and confer with CEA about their most recent request.

Thus, CEA knew prior to filing this motion that its table was wrong and highly misleading. AUO asked CEA to inform the Court of the flaws in the table, but CEA did not bother to do so. (Ex. A) With the exception of one panel (T201VN02), AUO has produced relevant, responsive technical documents for what it believes are all the MVA panels in CEA's table. AUO is gathering documents for that panel. At the meet and confer with CEA, AUO also agreed to produce relevant technical documents to CEA for any MVA panels not listed on the table, and AUO is in the process of gathering relevant technical documents for MVA panel B150XG03. AUO respectfully requests that it be given until September 23, 2005 to complete the production of these remaining technical documents.

AUO disputes CEA's statement that it lacks necessary technical documentation. With the exception of the two MVA panels identified above, AUO has produced polarizer specifications for its MVA products that show Rth and Ro values, documents showing the films used in each polarizer, documents showing where TAC is used in each polarizer, documents showing the layout of AUO's products, cell gap documents, and the specifications of the liquid crystals used in AUO's products. CEA does not dispute that it has this information. What CEA really wants is for AUO to do its homework for it, and that is not a proper basis for compelling AUO to answer the table or any other interrogatory over the 25 including subparts that CEA has propounded. It is against this backdrop that the Court should decide CEA's motion.

The Scheduling Order in this case was a painstakingly negotiated agreement between CEA and the Defendants. AUO and Sharp took a lead role for the Defendants in that negotiation and in the hearing before the Court on it. The parties disputed many things including the discovery schedule and the number of hours of deposition. *See generally* Paragraphs 3a and 3c. However, CEA and the Defendants never disputed that the presumptive limits on the number of interrogatories in Fed. R. Civ. P 33(a) would control in this matter. CEA now seeks to renege on that agreement. In its present form, this case is a routine patent case that has come through this District many, many times. There is no exception for patent cases in Rule 33(a).

The Honorable Judge Kent A. Jordan
August 22, 2005
Page 3

In addressing CEA's motion, the Court should be mindful of the purpose of the 1993 Amendments to Rule 33(a). According to the Advisory Committee notes, "[t]he purpose of this revision is to *reduce the frequency* and *increase the efficiency* of interrogatory practice." Fed. R. Civ. P. 1993 Advisory Committee Notes (emphasis added). Moreover, Congress specifically noted that the amendments to Rule 26 meant that "there should be less occasion to use [interrogatories]" and that interrogatory discovery can be costly and can serve as a means for harassment. *Id.* In 2000, Congress amended Rule 26(b) to limit discovery generally to information relevant to the claims and defenses at issue in litigation and imposed national limits on the number of interrogatories. Fed. R. Civ. P 26(b) 2000 Advisory Committee Notes. This is further evidence of the limited role Congress wants interrogatories to play in federal litigation.

CEA half-heartedly argues that it is not over the 25 interrogatory limit. However, a simple review of CEA's interrogatories and the numerous specifically denominated subparts and implicit subparts shows that CEA is well over the limit. AUO has tabulated its calculation of CEA's interrogatories in Ex. D. CEA considers its table as 1 interrogatory even though it seeks 14 separate and distinct pieces of information for 30 different panels (many of which CEA now admits are irrelevant). AUO believes that CEA has served at least 62 interrogatories giving a generous count to CEA on its second set of interrogatories, and AUO would be justified in asserting that CEA has served many more interrogatories than that.

Numerous courts have strictly enforced the 25 interrogatory limit and found that interrogatory subparts that could stand alone as a separate question are "discrete" and, therefore, separate interrogatories. *Nyfield v. Virgin Island Telephone Corp.,* 200 F.R.D. 246, 247-48 (D.V.I. 2001); *Kendall v. GES Exposition Services, Inc.,* F.R.D. 684 (D. Nev. 1997); *Banks v. Office of the Senate,* 222 F.R.D. 7, 10 - 11 (D.D.C. 2004).

Courts do not grant requests for additional interrogatories as a matter of course. Instead, Courts require parties requesting additional interrogatories to make a "particularized showing" demonstrating need. *Duncan v. Paragon Publishing, Inc.,* 204 F.R.D. 127, 128 (S.D. Ind. 2001); *Archer Daniels Midland Co. v. Aon Risk Services, Inc.,* 187 F.R.D. 578, 587 (D. Minn. 1999). Courts also require a party seeking additional discovery to exhaust other available discovery avenues. *Whittingham v. Amherst College,* 163 F.R.D. 170, 171 (D. Mass. 1995). CEA has done neither. It proffers mere lawyer argument about the alleged complexity of the case and misrepresents the state of AUO's technical document production. CEA did not provide any affidavits in support of its motion. Moreover, it has only recently served AUO deposition notices and it has not deposed a single AUO technical witness.

In fact, CEA is attempting to use its interrogatories as a substitute for depositions and other discovery. That is improper. *Duncan v. Paragon Publishing, Inc.,* 204 F.R.D. 127, 129 (S.D. Ind. 2001)(denying request to serve additional interrogatories on the grounds that they were a substitute deposition). CEA's interrogatories 9 – 15 and 17 – 21 are an attempt to end run those discovery avenues and obtain information that CEA might attempt to inquire about in other discovery vehicles. That is an additional basis to deny CEA's motion.

AUO has answered CEA's contention interrogatories as best as it presently can given the state of discovery. See Interrogatories 2 – 7. Moreover, AUO agreed during the meet and confer to supplement

The Honorable Judge Kent A. Jordan
August 22, 2005
Page 4

its responses to Interrogatory 4 to identify additional prior art AUO has discovered and Interrogatory 5 to set forth the unenforceability contentions AUO has pled in its Amended Answer.  AUO has also agreed to update its contention interrogatory responses after it has its deposition discovery of CEA's witnesses (which is the subject of AUO's motion).  "The purpose of interrogatories is to obtain a party's admissions and contentions under oath and to narrow issues in the case".  *Life Music v. Broadcast Music, Inc.,* 41 F.R.D. 16, 26 (S.D.N.Y. 1966).  That purpose has been met here.  Because CEA has discovery into AUO's contentions, it will not be prejudiced by denial of its motion.

Finally, AUO has objected to certain of CEA's interrogatories on the grounds that they are vague and ambiguous, overly broad and unduly burdensome and CEA has not addressed those objections.  For example, CEA's table in interrogatory 20 contains no definitions whatsoever of the technical terms it seeks information about and AUO is left to guess at their meanings.  That is improper.  In addition, certain of AUO's polarizers use multiple TAC layers and CEA's table does not define the layer for which it seeks information.  Moreover, some of this information is simply not in AUO's possession because AUO's polarizers (including their films) are made by third party vendors and this information is a trade secret of the vendors.

II.     CEA's Motion to Compel AUO and Samsung to Produce Their Worldwide "VA" mode Sales and Revenue Figures Should be Denied.

CEA seeks overbroad discovery into AUO's and Samsung's worldwide sales and revenue figures of VA mode TFT-LCD products regardless of whether such products ever enter the U.S. after leaving the defendants' manufacturing facilities.  Even by CEA's own estimates, revenues generated by such non-U.S. sales are a significantly larger percentage of the VA LCD revenues than U.S. sales.  In support of its motion, CEA essentially argues four points:  (1) that the gross worldwide sales numbers are allegedly relevant to an "extraterritorial inducement" argument; (2) that the gross worldwide sales numbers are allegedly relevant to determine a reasonable royalty; (3) that the defendants have allegedly placed the worldwide sales at issue by asserting obviousness of the patents-in-suit; and (4) that CEA is going to provide a damages theory based on third party estimates of the Defendants' U.S. sales as a percentage of worldwide sales, and therefore needs these figures.  CEA is wrong on all counts.  The non-U.S. sales information that CEA seeks is not relevant to any claim or defense in this action nor is it reasonably calculated to lead to the discovery of admissible evidence, and, therefore, it is not discoverable under Fed. R. Civ. P. 26(b)(1).

Initially, AUO has produced sales and revenue figures for MVA panels that it has sold into the United States, and AUO has agreed that it will update these sales figures prior to trial.  Samsung has agreed to do the same.  Therefore, CEA has discovery into the United States sales of which both companies are aware.  Neither Samsung nor AUO know the extent to which any of its unaffiliated third party customers bring their products into the United States (if at all) and the gross world-wide sales and revenue figures CEA seeks do not shed any light on that issue[2].  Significantly, in its correspondence with Samsung, CEA has acknowledged that what CEA is really seeking are sales into the U.S., both "direct

---

[2] Samsung sells the accused VA LCD modules to both affiliated and unaffiliated third party customers.  To the extent Samsung is able to obtain VA mode U.S. sales information from its subsidiaries, it will produce such information to CEA.

The Honorable Judge Kent A. Jordan
August 22, 2005
Page 5

and indirect." However, because neither AUO nor Samsung know the purported "indirect" U.S. sales of their third party customers, CEA has now alleged an entitlement to the worldwide sales figures. The worldwide figures, however, do not bear any legally significant relationship to the alleged indirect U.S. sales.

Samsung's and AUO's worldwide sales are not relevant to an "extraterritorial inducement" theory. It is hornbook patent law that U.S. patents do not have extraterritorial effect. *Deepsouth Packing Co v. Laitram Corp.*, 406 U.S. 518 (1972); *Dowagaic Mfg. Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641 (1915)("The right conferred by a patent under our law is confined to the United States and its territories and infringement of this right cannot be predicated on acts wholly done in a foreign country"). CEA concedes that 35 U.S.C. §§ 271 (a) and (c) - (i) cannot cover AUO's and Samsung's overseas sales activity. CEA claims that merely because AUO and Samsung "know" that some of their products enter the United States via downstream unaffiliated third parties, that constitutes inducement under § 271(b). CEA is wrong.

Proof of actual intent to cause the acts which constitute infringement is a necessary prerequisite to finding active inducement. *Warner-Lambert Co. v. Apotex, Inc.* 316 F.3d 1348, 1363 (Fed. Cir. 2003). Even if defendants have "knowledge of the acts alleged to constitute infringement" (which is not conceded by AUO and Samsung) that "is not enough". *Id.*

It beyond question that AUO and Samsung have every legal right to sell their products in Taiwan and Korea free of CEA's U.S. patents and that both companies' products have substantial non-infringing uses (i.e. use in Taiwan, Korea, or any other country in the world other than the United States).[3] That is dispositive of CEA's inducement theory. According to the Federal Circuit, the mere sale of a device capable of substantial non-infringing uses will not constitute inducement. *Dynacore Holdings v. Phillips et. al.*, 363 F.3d 1263, 1276 n.6 (Fed. Cir. 2004). Thus, "sale of a lawful product by lawful means, with knowledge that an unaffiliated, third party may infringe, cannot, in and of itself, constitute inducement of infringement". *Id; see also Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001)("Although Sunex manufactured every Z-Creeper that Arcan sold in the United States, all of Sunex's activites took place in Shanghai. Sunex, therefore, cannot be liable for infringement under § 271 nor be jointly liable with Arcan and Telecris."); *Hewlett-Packard Co v. Bausch & Lomb Inc.*, 909 F.2d 1464 (Fed. Cir. 1990)(merely selling an asset cannot be an inducement).

The cases CEA cites are all distinguishable because they involve situations where the alleged inducer was directly involved in the U.S. sales. As set forth above, AUO has already provided discovery for its U.S. sales. Samsung will produce the same.

CEA's second theory is that the gross world-wide sales and revenue figures are relevant to a hypothetical negotiation because AUO's and Samsung's actual profits are allegedly indicative of anticipated profits. AUO has already produced and Samsung will produce its revenue figures in the U.S. Therefore, CEA already has the information relevant to this theory from AUO and will have it from Samsung. The gross worldwide sales numbers do not shed any light on what would be relevant to a

---

[3] AUO and Samsung are vigorously litigating the issues of infringement, validity, and enforceability and do not concede that their panels infringe CEA's patents.

The Honorable Judge Kent A. Jordan
August 22, 2005
Page 6

hypothetical negotiation for the U.S. patent.  The *U.S.* figures are the relevant figures in a hypothetical negotiation about a *U.S.* patent.

Third, the gross world-wide sales and revenue figures are not relevant to commercial success. Since CEA has a U.S. patent, it is the U.S. sales that are relevant to commercial success.  AUO has produced the figures relevant to a commercial success analysis:  its U.S. sales and revenue figures. Moreover, commercial success requires a nexus between the commercial success and the claimed invention.  *DeMaco Corp. v. F. Von Langsdorff Licensing Ltd.,* 851 F.2d 1387, 1392 (Fed. Cir. 1988)("When the thing that is commercially successful is not coextensive with the patented invention – for example, if the patented invention is only a component of a commercially successful machine or process – the patentee must show prima facie a legally sufficient relationship between that which is patented and that which is sold.")  The patents-in-suit were filed in the mid-1980's, long before wide-screen LCD televisions and computers monitors existed and related only to a discrete aspect of those devices, thus the required "nexus" to make commercial success a relevant indicator of non-obviousness cannot exist and CEA should not be allowed to use a commercial success argument as a tool to get AUO's and Samsung's highly confidential worldwide sales and revenue data.[4]

Fourth, CEA claims that it is entitled to obtain AUO's and Samsung's worldwide sales numbers because it is going to rely on allegedly publicly-available estimates about the percentage of each company's sales that enter the U.S.  CEA cites no case law in support of its unique theory of damages, and the Defendants are not aware of any case law that supports it.  Indeed, it represents a flagrant and impermissible attempt to bypass the required elements of proof of an inducement claim under 35 U.S.C. § 271(b).  *See* Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931)(damages "not be determined by mere speculation or guess.")

For the reasons set forth, CEA's motion to compel discovery into the worldwide sales and revenue figures of AUO and Samsung should be denied.

---

[4] CEA makes an argument that sales of non-VA mode technology is also discoverable citing *Zygo Corp. v. Wyko Corp.,* 79 F.3d 1563, 1571 (Fed. Cir. 1996).  *Zygo* does not stand for that proposition.  Moreover, CEA has already conceded that there are acceptable non-infringing substitutes to its patents.  For example, CEA's briefing on its preliminary injunction motion argued that Samsung would not be harmed by the grant of a preliminary injunction because it could switch to In-Plane Switching Technology ("IPS").  CEA Mem. in Support of Prelim. Inj. Mot. (D.I. 59-1), pp. 36-37.  CEA also argued that widely used TN technology was not within the claimed invention.

LAW OFFICES
CONNOLLY BOVE LODGE & HUTZ LLP
The Honorable Judge Kent A. Jordan
August 22, 2005
Page 7

Respectfully submitted,

/s/Gerard M. O'Rourke
Gerard M. O'Rourke
Del. Bar. I.D. No. 3265
Attorney for AU Optronics Corp.

Respectfully submitted,

/s/Richard Horwitz
Richard Horwitz
Del. Bar. I.D. No. 2246
Attorney for Samsung Electronics Co., Ltd.

cc:   Gaspare Bono, Esq. (via electronic mail)
      Richard Kirk, Esq. (via electronic mail)
      Richard L. Horowitz, Esq. (via electronic mail)
      Josy W. Ingersoll, Esq. (via electronic mail)
      William J. Marsden, Jr., Esq. (via electronic mail)
      Robert H. Richards, III, Esq. (via electronic mail)
      Neil P. Sirota, Esq. (via electronic mail)
      Robert W. Adams, Esq. (via electronic mail)
      Sherman W. Kahn, Esq. (via electronic mail)