# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COMMISSARIAT À L'ENERGIE<br>ATOMIQUE, | :<br>:<br>: |
| Plaintiff, | :<br>: |
| v. | : Civil Action No. 03-484-MPT |
| SAMSUNG ELECTRONICS CO., et al., | :<br>: CONSOLIDATED CASES |
| Defendants. | :<br>: |

## **MEMORANDUM ORDER**

Plaintiff, Commissariat à l'Energie Atomique ("CEA") objected to the

Report and Recommendations ("Report") (D.I. 659) of the Special Master issued on

May 12, 2006.[1] The Report resulted from a request by then defendant AU Optronics

Corporation ("AUO") to compel production of communications relating to the

prosecution of French patents, many of which related to the those underlying the

patents-in-suit.[2] CEA asserts that those documents are shielded from production on

the basis of French law on privilege and contends that the findings of the Special

Master to the contrary are erroneous. The Special Master found that communications

between CEA and its patent agent do not enjoy the privilege of absolute professional

secrecy under French law because CEA failed to show that: (1) the communications

[1] D.I. 745.

[2] Since the entry of the Report and the subsequent briefing on the objections,
AUO is no longer a party to this matter. Samsung Electronics Co. ("Samsung") is the
sole remaining defendant and has proceeded with defending the Special Master's
decision. In this Order, Samsung is substituted for AUO.

involve individuals who are entitled to assert evidentiary privilege by virtue of their position; (2) the appearance on the Special List entitles an entity or its employees to professional secrecy; and/or (3) the communications are between individuals who had the requisite independence at the time that they occurred. As a result, the Special Master concluded that communications between CEA and its patent agents or engineers and internal communications between or among its own employees are not subject to evidentiary privilege protection. This is the court's *de novo* review of the Special Master's findings.

## Procedural Background

Samsung moved to compel the production of certain communications relating the prosecution of French patents, the production of which CEO opposes on the basis that the communications between CEA and a French firm of patent agents, Brevatome, are privileged.

When the issue arose, a schedule was established by the Special Master to address this matter and other discovery disputes between the parties. Included in the process was selection of the court-appointed expert. Notably, in the selection of the court-appointed expert, the list of candidates was reviewed and discussed with the parties, "who unanimously expressed a preference for someone with 'practical' experience."[3] No objection was raised with the retention of Isabelle Leroux as the court-appointed expert.

The schedule included: a due date of the report of the court-appointed

_____

[3] D.I. 695 at 6.

2

independent expert on French law issues, specifically French privilege law; a date when

CEA was required to provide documents that outlined *any* ownership relations between

CEA and Brevatome, including organizational charts; a due date for identification by the

parties of *any* fact witnesses expected to testify at the evidentiary hearing, along with

the nature of their expected testimony; and deposition dates for any fact witnesses, the

court-appointed expert and the parties' expert witnesses.[4]  The hearing and submission

of relevant evidence occurred on April 21, 2006, which resulted in the Report, of which

thirty-one of the thirty-nine pages were devoted to the issue of French privilege.[5]

## Standard of Review

Pursuant to Federal Rule of Civil Procedure 53(g), when acting on a master's

report and recommendations, the "court must afford an opportunity to be heard and

*may receive* evidence, and may:  adopt or affirm; modify; wholly or partly reject or

---

[4] D.I. 1040.

[5] The exhibits to the hearing included as follows:  the declaration of CEA's expert witness, Denis Monégier du Sorbier dated March 8, 2006; the supplemental declaration of Monégier du Sorbier dated March 10, 2006 and his deposition transcript dated April 20, 2006; the declaration of Samsung's expert, Jean-Yves Plaçais dated March 6, 2006, his rebuttal declaration dated March 10, 2006 and his deposition transcript dated April 20, 2006; the declaration of the court-appointed expert, Isabelle Leroux dated April 11, 2006, her revised declaration dated April 18, 2006 and her deposition transcript dated April 19, 2006; the Power-Point presentation by Eric Le Forestier, a French intellectual property attorney, that was presented at the International Federation of Intellectual Property Attorneys in October 2004; original and translated copies of the French Intellectual Property Code; a bulletin from the National Institute of Industrial Property date September 16, 2005 entitled *Qualification et Organisation Professionnelle*; a printout from Brevatome's website; and, a certified translation of the March 24, 2000 decision by the French Supreme Court, which was provided to the Special Master on April 26, 2006.

3

reverse; or resubmit to the master with instructions."[6] Findings of fact and conclusions of law are reviewed *de novo*.[7] The Special Master's findings on procedural matters are reviewed under the abuse of discretion standard.[8]

*De novo* review, however, does not necessarily mean a review that includes the submission of new evidence, particularly when evidentiary proceedings previously occurred before the Special Master. When a record on review "is sufficiently developed the district court may, *in its discretion*, merely conduct a *de novo* review" of the decision, making its own independent determination.[9] Although *de novo* review refers to the review based on the record below plus any additional evidence received by the reviewing court, it also refers to review of the decision based only on the record below. The plain language of Rule 53 shows that the review of a Special Master's decision requires the court to make a *de novo determination*, not conduct a *de novo hearing*. Rule 53 is similar to 28 U.S.C. § 636(b)(1)(C), when a district court reviews the recommendations of a magistrate judge, the district judge "may accept, reject, or modify" the findings made by the magistrate and "may receive further evidence." Unlike a *de novo* hearing, "a *de novo* determination requires the district judge to 'consider the record which has been developed before the magistrate [judge] and make his own

_____

[6] Rule 53(g)(1) (emphasis added).

[7] Fed. R. Civ. P. 53(g)(3) and (4).

[8] Fed. R. Civ. P. 53(g)(5).

[9] *See Luby v. Teamsters Health, Welfare and Pension Trust Funds*, 944 F.2d 1176 (3d Cir. 1991) (involving analysis of *de novo* review under ERISA), *relying on McMahon v. New England Mut. Life Ins. Co.*, 888 F.2d 426, 431 (6th Cir. 1989) (emphasis added).

4

determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate [judge].'"[10]

After having the opportunity to reflect on the Special Master's decision, CEA chose to designate certain previously unidentified individuals as fact witnesses, who also express opinions, by submitting their declarations.[11] Further, CEA submitted two additional declarations from its expert, Mr. Monégier du Sorbier, commenting on why, in his opinion, the Special Master is wrong.[12] Attached to his declarations is additional literature, not previously submitted, on the alleged inherent danger in making assumptions about a law's intended reach.[13] The literature attached are articles or treatises on French law, not decisions regarding the interpretation of French law.

In light of the opportunity to develop the record including: a time period to

---

[10] *Taberer v. Armstrong World Industries, Inc.*, 954 F.2d 888, 904 (3d Cir. 1992) (quoting *United States v. Raddatz*, 447 U.S. 667 (1980)).

[11] Those factual witnesses are Philippe Garderet, *Président du Conseil d'Administration* and *Director Général* of Brevatome (D.I. 747), Thierry Sueur, an independent patent agent employed by L'Air Liquide, a company on the Special List (D.I. 770) and René Muller, *Directeur du Département Propriété Industrielle* of SGR, also a company on the Special List (D.I. 771). Garderet concludes that since Brevatome is on the Special List, it does the same work as the Industrial Property Attorneys and is bound by the same duties as such counsel. He argues that the 2004 (addressed later herein) made the professional secrecy obligation an absolute evidentiary privilege for Industrial Property Attorneys. He maintains that the change also applied to firms like Brevatome, who are patent agents, because, like Industrial Property Attorneys, Brevatome is held to the same requirement of secrecy. Both Sueur and Muller propound the same conclusions for their respective companies, and espouse the same opinion regarding the effect of the 2004 . The declarations of all three fact witnesses are conclusory and contain no support for their assumptions.

[12] *See* D.I. 766 and 824.

[13] *See* D.I. 766, Ex. A-C.

5

identify fact witnesses, along with their expected testimony; to depose such witnesses; to provide expert opinions both through declarations and depositions; to submit exhibits and the extensive evidentiary hearing, which permitted additional examination of the experts, along with opening statements and post-hearing submissions, CEA had more than an adequate opportunity to present all relevant information and argument to the Special Master *before* his Report issued. The court sees no need to augment the record further with more expert opinions and factual assumptions and to do so in this situation would emasculate the purpose of the Special Master and Rule 53.[14]

## Factual Background

Most significant facts related to French law on privilege do not appear to be in dispute. Rather, the interpretation of those facts and their application to the issues concerning French law on privilege are.

The documents at issue contain communications between employees of CEA and employees of a company, Brevatome, which assisted CEA in the prosecution of its French patents. According to the Report and not in dispute on review, the documents fall into one or more of the following categories: (1) communications between CEA employees and Brevatome occurring in the 1980's which relate to patent prosecution;

---

[14] To the extent that there are decisions by French courts relevant to the issues involved, whether such decisions were presented to the Special Master, the court has considered those opinions in its analysis.

As recognized in the *Advisory Committee Notes* to Rule 53, the existence of magistrate judges may make the appointment of outside masters unnecessary, but their continued use is desired when a magistrate judge is unavailable for lengthy and detailed supervision of discovery in a case. In other words, the purpose of Rule 53 is allow the court to be more responsive to counsel and litigants and to improve its efficiency. It is not intended to be used to embark in serial "minitrials" on discovery issues.

(2) communications between CEA employees and Brevatome after 1990; (3) communications between CEA employees and "in-house" CEA counsel; and (4) miscellaneous documents, referred to as the "Prosecution Related Documents." When the French patents were prosecuted in the 1980's, Brevatome employees were not attorneys; rather, they were patent practitioners referred to as either patent engineers or patent agents.

As the Report commented, the three experts presented during the hearing before the Special Master (one for each side and one appointed by the court as noted above), agreed on the historical development of the title *Conseil en Propriété Industrielle* ("Industrial Property Attorney").[15] Prior to a décret ("decree") issued on July 13, 1976, French patent agents held the title *conseils en brevet d'invention* and practiced as unregistered individuals. The 1976 decree required them to register on a National List of Patent Agents compiled by the Director of the *Institute National de la Propriété Industrielle* ("INPI" National Office or Institute of Industrial Property). That list of patent agents included those who were certified in patent law and completed four years of training with a patent firm. The activities of a patent agent, whether individually or with a professional civil company, consist of advising, assisting or representing clients before the INPI, for intellectual property rights (patent, trademark, designs).

---

[15] As indicated in the Report, and re-emphasized in the briefing on the Objections, both sides attacked each other's experts, as well as, the court-appointed expert. The court views most comments regarding each expert's alleged shortcomings as picayune. Moreover, at the hearing before the Special Master, the parties agreed that all experts "are competent to render the opinion under French law for *Daubert* purposes." D.I. 746, Ex. B at 7:7-19.

Unlike an *avocat*,[16] a patent agent could not represent clients before civil courts and "'was not subject to the same deontological rules . . . .'"[17]

In the 1970's, patent agents founded their profession organization known as the *Compagnie Nationale des Conseils en Brevet* ("National Company of Patent Agents"), which under Article 5 of its by-laws required members to comply with professional secrecy, while those who were merely contained on the list of qualified persons were not bound to that duty.[18] The by-laws, however, are regulations personal to the organization.

In the late 1980's, Article 17 of the Deontological Code of the National Company of Patent Agents was adopted which required that a patent agent could not testify or disclose any documents of his clients or his professional files to a third party, except as required by law. The Deontological Code, however, is an internal set of professional regulations without the imprimatur of a statute, and could not be used to refuse to disclose either testimony or documents requested by judicial authorities.

Through a French *loi* ("statute or law") enacted in 1990, the title of *Conseil en Propriété Industrielle* ("Industrial Property Attorney") was created.[19] The purpose of that

---

[16] An *avocat* is an attorney or lawyer under the American concept of those terms.

[17] D.I. 659 at 11.

[18] The List of Qualified Persons are those individuals who had professional skills in patents, but were not qualified to be patent agents.

[19] To qualify as an Industrial Property Attorney, specific criteria must be met under certain is, including Articles ("Art.") L. 422-7 and L. 422-12. Although the word "Attorney" is included in the title, a person qualified in that profession is neither an attorney or barrister in the American understanding of those terms. An Industrial Property Attorney is not an *avocat* and may not represent clients before French courts.

8

statute was to replace, formalize and organize the professions of patent and trademark agents under the French Intellectual Property Code ("IPC") and, in essence, established a monopoly in favor of such attorneys practicing before the French Patent Office. Under Article 43 of the IPC, however, those pre-existing patent practitioners who could not become or were not qualified as Industrial Property Attorneys under the IPC were allowed to continue their practice and were placed on the *Liste Speciale* ("Special List" or List 3).[20] Such practitioners were essentially "grandfathered" to continue practicing as they previously had. Those on the Special List "'provide industrial property consulting services but who do not comply with professional conditions of exercise of the profession of Industrial Property Agent.'"[21]

In 1990, Brevatome was placed on the "Special List" of patent agents subject to the IPC. In 1992, Article R. 422-54, a decree, was enacted under the IPC. It provides:

An industrial property attorney:

  2. Shall observe professional secrecy: secrecy shall extend, in particular, to consultations given to his customer, to professional correspondence and to all documents drawn up in that connection . . . .

In July 1994, Article 12.3 was adopted by the National Association of Industrial Property Attorneys (a professional association under the authority of the French Ministry of Industry), as an internal regulation, which required that:

The [Industrial Property Attorney] shall respect professional secrecy; in any matters, the advice sent by an [Industrial Property Attorney] to his

---

[20] D.I. 659 at 12.

[21] *Id.* at 13. D.I. 746, Declaration of Independent Expert at 5 ¶ 1.A.1.

9

> client or aimed to him and the mails exchanged between the client and the
> [Industrial Property Attorneys] are protected by professional secrecy . . . .
> *However, the professional secrecy is not opposable* [not enforceable] *to
> the persons who are legally entitled to conduct judicial administrative or
> customs enquiries or to the courts.*[22]

In 2002, another decree modifying the IPC was enacted, Art. R. 423-1, which

provides that "the persons entered into the [special] list . . . are obligated in the

performance of their professional activity to comply with the rules set forth in Art. L.

422-8 and R. 422-54."[23]  There is no dispute that until that decree, those on the Special

List were not bound by the same duty of professional secrecy as were Industrial

Property Attorneys, and only through that decree was the duty initially imposed.

Further, all experts agree that the duty of professional secrecy did not operate as an

evidentiary privilege under the IPC in 2002.[24]

After the decision of *Bristol-Myers Squibb Co. v. Rhone Poulenc Rorer, Inc.,*[25]

the National Association of Industrial Property Attorneys amended Article 12.3 by

deleting language which denied protection of client's communications from the French

judiciary or courts.  That amendment was confirmed by Decree No. 2004-199, enacted

---

[22] D.I. 746, Declaration of Independent Expert at 5-6 ¶ 1A.2 (emphasis in
original).

[23] The second sentence of this decree provides if those on the Special List
default in their obligations, they are subject to Art. R. 422-56 through R. 422-66, which
reference the disciplinary measures and procedures that may be taken against
Industrial Property Attorneys for breach of their duties. *See* D.I. 746, Ex. M "Intellectual
Property Code."

[24] *See* D.I. 746, Ex. B at 84:12-15; Ex. B at 109:19-110:21; Ex. B at 146: 7-25.

[25] 188 F.R.D. 189 (S.D.N.Y. 1999) (which found that French patent agents and
similar counsel, although owing a duty of secrecy to their clients, do not enjoy
evidentiary privilege in that regard).

February 24, 2004.[26]

On February 11, 2004, a statute, Article L. 422-11, was passed, which provides:

In all matters and for all services referred to in Article L. 422-1, the industrial property attorney shall observe professional secrecy. Such secrecy extends to all consultations addressed to or destined to his client, to professional correspondences exchanged with his client, a colleague or attorney, to discussion notes, and more generally, to all the documents of the file.[27]

Article L. 422-11 created an evidentiary privilege.[28]  The parties do not agree with

respect to the interpretation and effect of that statute and whether it applies to members

on the Special List. The experts, however, do agree that the 2004 statute, enacted by

the French Parliament, was in reaction to the *Bristol-Myers Squibb Co.* decision.

According to all the experts, the 2004 statute was intended to address that decision by

creating an evidentiary privilege similar to that applied in the United States. The

experts further agree that only absolute professional secrecy creates an evidentiary

privilege under French law.

## French Enactments

An area of apparent dispute is the effect and operation of French enactments.

According to CEA's expert, on the issue of absolute professional secrecy, the 2002

decree and the 2004 statute stand on equal footing. Although he recognized that

theoretically there is a distinction between a law and a decree, he opined that the two

---

[26] D.I. 746, Ex. M.

[27] *Id.*

[28] All experts agree that evidentiary privilege was established for the first time through the 2004 statute, thereby making professional secrecy absolute.

11

enactments have to be read together and by his "implied combined construction" of the 2002 decree and 2004 statute, Brevatome enjoys evidentiary privilege, in addition to the obligation of secrecy.[29]  CEA's expert concludes that since Brevatome has the duty of professional secrecy under the 2002 decree, the 2004 statute, which does not authorize French courts to order or require disclosure, was intended to apply to those firms, entities or individuals on the Special List, and was not limited to Industrial Property Attorneys or *conseil en propriété industrielle*.[30]

Samsung's expert and the independent expert disagree.  Both distinguish between a statute and decree in France.  Samsung's expert opines that absolute professional secrecy must be included in a *loi*, or statute, to compel French courts to apply it.  Similarly, the independent expert maintains that under French law, a statute is necessary for the privilege of absolute to exist.

In his analysis, Samsung's expert points to the title and language of the 2004 law, specifically that both only reference Industrial Property Attorney and do not mention the Special List.[31]

_____  _____

[29] Although CEA's expert denied that his conclusion that absolute privilege exists for those on the Special List was the result of combining a decree and statute, he specifically testified that "the law [Art. L. 422-11] has to be combined with the decrét and the decrét has been modified following the law." D.I. 746, Ex. B at 76:21-22.

[30] D.I. 746, Ex. B at 27:3-30:8; 34:5-12

[31] *Id*. at 106:14-107:1; 117:21-118:10: *Loi n ° 2004-130 du 11 févier 2004 réformant le statut de certaines professions judiciaires ou juridiques, des experts judiciaires, des conseil en propriété industrielle et des experts en ventes aux euchéres publiques.* (emphasis added).  The English interpretation is "February 11, 2004 reforming the statutes of certain judicial, or judiciary professions of judicial experts, of industrial property attorneys and auction experts."

12

**Parties' Contentions**

CEA contends that the Report is "directly contrary" to French law adopted to address the holding in *Bristol-Myers Squibb Co.* CEA maintains that the 2004 , which cannot be modified in the future by an internal regulation or decree, created an absolute privilege for Industrial Property Attorneys and, therefore, for patent agents, such as Brevatome, who are on the Special List. CEA's analysis relies upon an integrated reading of the IPC, which it contends is supported by the amended IPC. CEA emphasizes that Brevatome is bound by the same obligations of Industrial Property Attorneys, which includes the duty of professional secrecy that was made into an absolute privilege by the 2004 . In support of that proposition, CEA notes that the IPC establishes the activities of both types of patent agents, that is, Industrial Property Attorneys and those on the Special List, by express reference in Art. L. 422-1. Article R. 423-1, under the 2002 Decree, makes Special List members obligated to comply with the rules of Art. R. 422-54, which requires that "[a]n industrial property attorney . . . shall observe professional secrecy . . . ." CEA concludes that, as evidenced by the evolution of the French patent agent privilege, when the obligation of professional secrecy became an absolute privilege, it applied to both Industrial Property Attorneys and Special List agents.[32]

CEA argues that the issue of independence, which Samsung stresses, is a red herring which has no basis in French law and cannot be found in the IPC. CEA

---

[32] Art. L. 422-11 as quoted by CEA provides: "In all matters and for all services referred to in Article L. 422-1, the industrial property attorney shall observe professional secrecy."

13

specifically rejects that independence is necessary for the evidentiary privilege to exist by pointing to Samsung's expert's testimony. According to CEA, Mr. Plaçais admitted that French *avocats* and Industrial Property Attorneys, who belong to law firms and report to their management, have evidentiary privilege. CEA maintains such testimony shows that independence is not required for the application of absolute privilege.

CEA contends that the Special Master erred by applying the principle of *expressio unius est exclusio alterius*[33] without considering the entire IPC and what the 2004 law did with respect to the Code. CEA purports that the effect of the Special Master's findings and Samsung's argument is repeal of the 2002 decree by implication, the decree which subjected those on the Special List to the same confidentiality responsibilities as Industrial Property Attorneys. CEA opines that interpreting the 2004 law as separate and distinct is wrong in light of the history of the IPC because that law simply was an amendment to the existing 2002 decree. In support of that argument, CEA points to the IPC which includes not only statutes, designated as Article or Art. L., but also, decrees which are denominated as Art. R. Whether designated as Art. L or Art. R., CEA maintains the decrees and laws are part of the same code, the IPC. According to CEA, since there is no conflict between the 2004 law and the 2002 decree, no hierarchy of norms operates.

CEA posits that the evolution of the IPC, beginning in 1990 with the establishment of the Special List, imposed upon those on that list to comply, not only,

---

[33] Latin for "to express one is to exclude the other." "It is a canon of construction holding that to express or include one thing implies the exclusion of the other, or the alternative." *Black's Law Dictionary* 8th Ed. 2004 at 620.

14

with confidentiality obligations (as in the 2002 decree), but also, with other rules related to discipline, insurance and penalties that were applicable to Industrial Property Attorneys. As a result, the historical development of the IPC shows that, Special List members and Industrial Property Attorneys were treated as identical.

Samsung responds that the history of the various regulations, decrees and laws demonstrates the opposite. It emphasizes the 1990 law which created the Industrial Property Attorney profession as establishing a monopoly of who could practice before the French Patent Office. At the same time, the Special List was developed to grandfather in patent agents who did not qualify as Industrial Patent Attorneys under other professional laws, such as Art. L. 422-7 or Art. L. 422-12.[34] It notes that despite creating the Special List in 1990, a decree was passed in 1992 imposing the obligation of confidentiality only on Industrial Property Attorneys, and it was not until 2002 that the same duty was proscribed upon the Special List. Samsung asserts that the 2004 statute, because it is a *loi*, operates to make the privilege absolute.[35]

Samsung maintains that a distinction exists under the IPC between Industrial Property Attorneys and Special List members. In addition to the different times regarding the adoption of the duty of privilege, Samsung relies on the criteria to qualify as an Industrial Property Attorney, including the obligation of independence from

---

[34] According to Samsung, Art. L. 422-7 and. L. 422-12 require independence of Industrial Property Attorneys. Article L. 422-12 provides that the profession is incompatible with any commercial activity, which means one must be independent from commercial activity.

[35] Samsung points out that Art. L. 422-11 contains the same basic language as the 1992 decree, does not state that the privilege is absolute or opposable, and is silent regarding members of the Special List.

commercial activity. Samsung posits that there is no dispute that Brevatome, as a member of the Special List, does not meet the criteria of an Industrial Property Attorney, including independence. Samsung argues that there is no dispute that in-house attorneys or attorneys subordinate to a non-privilege holder cannot assert the privilege due to the absence of independence.

If an absolute privilege exists, the parties also dispute whether the 2004 law is retroactively applied, that is, whether Brevatome is protected from disclosing confidential information that arose before the statute was enacted. In this regard, CEA contends that the Special Master's findings that it does not relate back are in error.

## Discussion

The burden of showing the existence and application of a privilege falls on the party asserting the privilege.[36] Therefore, CEA is required to show that the communications at issue enjoy evidentiary privilege under French law.

CEA's premise is that the goal of the IPC is equality between Special List members and Industrial Property Attorneys, and because the duties are the same between the two professions, a co-extensive absolute professional secrecy privilege resulted under the 2004 statute. The court does not agree with that presumption.

As noted previously herein, prior to 1976, practitioners (non-avocats) in the patent or trademark field were not regulated. Decree 76-671 issued which required patent agents to register on a National List of Patent Agents and established

---

[36] *Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1443 (D. Del. 1989); *International Paper v. Fiberboard Corp.*, 63 F.R.D. 88, 93 (D. Del. 1974).

16

qualifications for patent agents. Thereafter, patent agents founded a professional organization. Article 5 of the by-laws of that organization required compliance with professional secrecy: thereafter, Article 17 of the Deontological Code of the professional group was adopted which restricted patent agents from testifying or disclosing any documents of their clients or their professional files to a third party, except as required by law. Both the Deontological Code and the by-laws are internal regulations and neither operated to prevent disclosure of testimony or documents requested by judicial authorities.[37]

According to the experts, a "revolution"[38] occurred in the practice of intellectual property during the 1990 to 1992 time frame when the title of Industrial Property Attorney was created by statute, along with other statutes which regulate that profession.[39] Article L. 422-4, enacted in 1990, provides that only Industrial Property Attorneys may represent individuals in proceedings of a technical nature before the National Institute of Industrial Property. It further provides that the specialization of such counsel is determined by Art. L. 422-1. Article L. 422-4 established a monopoly for Industrial Property Attorneys that was modified by Art. L. 422-5, which specifies that "[a]ny person carrying out the activities referred to in the first paragraph of Article L. 422-1 *on November 26, 1990*, may, notwithstanding the provisions of Article L. 422-4,

---

[37] CEA's expert describes the by-laws as a "duty chart" which evolved into a Deontological Code. D.I. 746, Ex. B at 20.

[38] D.I. 746, Ex. B. at 73, 98.

[39] D.I. 746, Ex. M.

17

represent persons . . . on the condition that they are entered in a special list . . . ."[40]
The exception in Art. L. 422-5 contained certain requirements to become a member of
the Special List: the practitioner had to have been "in practice" doing the activities
contained in the first paragraph of Art. L. 422-1[41] by the date of the enforcement of the
statute; he had to request entry on the list by a declaration made to the Director of the
INPI; and, that declaration had to be made "on pain of preclusion within two years at the
latest" of the enforcement date of the statute.[42]  Therefore, Art. L. 422-5 gave those
practitioners who were not qualified or chose not to be Industrial Property Attorneys a
window of opportunity to be on the Special List and continue their practice as it existed
prior to the "revolution" of 1990.  At that time, however, Special List members were not
subject to the various requirements under other statutes that controlled the practice and
qualifications of Industrial Property Attorneys.[43]

In 1992, Art. R. 422-54 was adopted into the IPC.  Under this decree, the duty of
professional secrecy was imposed upon Industrial Property Attorneys.  That decree,
however, contains no language stating it is not an evidentiary privilege.  Further, in
1997, other modifications to the IPC through decrees directed to Industrial Property

---

[40] *Id.* (emphasis added).  November 26, 1990 is the date on which the various
statutes discussed herein regarding the Industrial Property Attorney profession were
enacted.

[41] Those activities include assisting or representing others to obtain, maintain,
exploit or defend industrial property rights.  D.I. 746, Ex. M.

[42] D.I. 746, Ex. M.

[43] D.I. 746, Ex. M, *see generally*, Art. L. 422-6 through 10.

Attorneys occurred, which included restrictions on "canvassing and advertising,"[44] general standards (dignity, honor, independence and probity),[45] and disciplinary measures and procedures.[46]  None of those decrees immediately applied to members of the Special List.  It was not until February 18, 2002 with the passage of Decree No. 2002-215, Art. 5 (Art. R. 423-1) that, under the IPC, members of the Special List were subject to Art. R. 422-54, the duty of professional secrecy.[47]  Therefore, for almost ten years, Industrial Property Attorneys and Special List members were not subject to the same duty of professional secrecy under the IPC.

CEA's contention that an integrated reading of Art. R. 423-1 with Art. L. 422-11 is necessary because the duties of the two professions are the same and therefore, the 2004 law made their co-extensive professional secrecy obligation absolute for both, is not a complete nor fair reading of the IPC.  Contrary to CEA's representations, the obligations of the two professions are not the same.

CEA's argument ignores that on the same date Art. L. 422-11 was enacted, Art. L. 422-12 and 13 were also established.  Article. L. 422-12 provides that an Industrial

_____ _____

[44] *Id.* Art. R. 422-53

[45] *Id.* Art. R. 422-52

[46] *Id.  See generally*, Art. R. 422-56 through 66; Art. L. 422-10.  Certain of those decrees were further modified on February 18, 2002.

[47] As a result of Art. R. 423-1, those on the Special List were also subject to Art. L. 422-8 (the requirement of professional liability insurance) and failure to comply with Art. R. 423-1 made them subject to the disciplinary provisions of Art. R. 422-56 through 66 and the penalties contained in Art. L. 422-10 (warnings, reprimand, suspension or striking off the list).  They were not, however, subject to the requirements of Art. L. 422-6, 7 or 9 or Art. R. 422-52 (exercise profession with dignity, honor, independence and probity) and Art. R. 422-53 (canvassing and advertising).

19

Property Attorney cannot be involved with *any* commercial activity, nor associate with any association, partnership, limited liability company, or report to any chairman of the board of directors, member of the managing board, general or assistant general director or president of a company or corporation unless the association, partnership, company corporation or superior engages in the profession of Industrial Property Attorney. Under Art. L. 422-13, "[t]he profession of industrial property attorney *is incompatible* with the exercise of any other profession, subject to special legislative or regulatory provisions."[48] No argument or suggestion is made that either of these statutes apply to the Special List. Further, there is no evidence that similar obligations exist for the Special List under the IPC, as found in Art. L. 422-12 and 422-13.

The clear reading of those statutes indicate that Industrial Property Attorneys must be independent from other professions and commercial influences and may only associate with or report to supervisors, persons or entities within their profession. Further, the court does not consider it merely serendipitous that those statutes were enacted within the same law[49] that the evidentiary privilege statute was and that all three statutes are, by their content, solely directed to Industrial Property Attorneys.

Moreover, from the evidence presented, Art. L. 422-7 was never made applicable to the Special List. The statute imposes limitations on companies which operate within the profession of Industrial Property Attorneys and requires that the chairman of the administrative board, the directors' general, members of the board, the

---

[48] D.I. 746, Ex. M (emphasis added).

[49] Law No. 2004-130, February 11, 2004, Art. 67.

sole director general, managers and the majority of the members of the administrative
or supervisory board of those entities to be Industrial Property Attorneys. It further
requires that Industrial Property Attorneys hold more than one half of the capital and
voting rights and that any new partner must be subject to prior approval of the
administrative board, supervisory board or managers. The statute, therefore, requires
all management and supervisory authority of the company to be members of that
profession.

Article L. 422-7, L. 422-12 and L. 422-13 are consistent since they require
individuals and companies that practice as and are Industrial Property Attorneys to be
under the control and supervision of members of that profession, and not subject to
other occupations or outside commercial influences.[50] As noted previously in footnote
47, Art. R. 422-52, which requires an Industrial Property Attorney "to exercise his
profession with dignity, honor, *independence* and probity . . .," does not apply to the
Special List.[51]

Therefore, CEA's argument that, under the IPC, the duties and obligations of the
Industrial Property Attorneys and the Special List are the same, which makes
evidentiary privilege apply to both, is not supported by a reading of the IPC. In fact,
there are three statutes and a decree which impose the requirement of independence
on Industrial Property Attorneys. The court has been cited to no similar obligation

---

[50] This requirement of independence is not dissimilar to the ABA Rules of
Professional Conduct, Rule 5.

[51] D.I. 746, Ex. M (emphasis added). However, under Art. L. 422-5, "no person
may be entered in the [special] list . . . if he is not of good character."

regarding Special List members. Despite CEA's protestations that independence is irrelevant, it apparently is not to the IPC. Further, CEA's expert recognizes that the lack of independence directly effects the successful assertion of evidentiary privilege. As he explained, "people employed by a firm may not be independent, because they are subordinate to their employer."[52] He acknowledges when, as in a corporation, the employer or superior does not possess the privilege, the employee is not independent, and a judge may order the superior or employer to produce the information.[53] Thus, the issue of independence often arises in relation to employees of a corporation, such as Brevatome.[54]

This lack of independence in a corporate hierarchy prevents in-house counsel for a company to have evidentiary privilege.[55] Similarly, *avocats* will lose evidentiary privilege if they leave a law firm to become employed by a corporation.[56] Under Art. L. 422-6, an Industrial Property Attorney is required to practice his profession either

_____

[52] D.I. 746, Ex. B at 36:12-14.

[53] *Id.* at 111:20-25.

[54] Although CEA criticizes the Special Master's analysis regarding the importance of independence and his alleged misunderstanding of the relationship between Brevatome and CEA, it does not refute his findings that Brevatome is not a law firm nor a firm of *conseil en propriété industrielle*. Moreover, CEA, in its April 26, 2006 letter to the Special Master, quoted from Brevatome's website which states: "From the very beginning, Brevatome has handled all industrial property matters (patents, trademarks, litigation, negotiations, licensing, etc.) *for its main shareholders*, major actors of the energy research and industry in France." (emphasis added). This admission and the declaration of Garderet (D.I. 747) shows that CEA owns stock in Brevatome.

[55] *Id.* at 114:18-25

[56] *Id.* at 114:8-17.

individually or as an employee of another Industrial Property Attorney.  This statute indicates, when read with the other statutes discussed previously, that an Industrial Property Attorney would lose independence if employed by a company or corporation not of his profession.  Further, CEA's expert agrees that he would lose evidentiary privilege if he became an employee of a corporation "[b]ecause I am *no more* an *independent* lawyer."[57]  He also admitted that in-house patent agents or engineers at a corporation would not have evidentiary privilege because of the lack of independence.[58]  Therefore, despite his later testimony that independence is irrelevant, and only membership on the Special List is determinative, a position CEA embraces in its critique of the Special Master, CEA's expert recognizes that independence is crucial to the application of evidentiary privilege and its absence means that the privilege does not exist.  Although CEA notes that the statutes and decrees of the IPC do not mention independence in relation to absolute professional secrecy, the testimony of all experts confirm that independence is necessary.  All experts agree that employees of a corporation (unlike *avocats* employed by law firms or Industrial Property Attorneys employed by entities consisting of their profession) do not have independence to assert evidentiary privilege because they are subordinate to management that does not enjoy that right.  Further, the emphasis in the IPC regarding independence and solely imposing that requirement on Industrial Property Attorneys refutes CEA's argument and

---

[57] D.I. 746, Ex. E at 16:2-7 (emphasis added).

[58] *Id.*

23

further shows that, under the IPC, the professions are not treated as identical.[59]

CEA's proposition that decrees and statutes are treated the same, when there is no conflict between a statute and a decree, because they are part of the same Code, ignores the hierarchy of norms noted in *Bristol-Myers Squibb v. Rhone-Poulenc Rorer Inc.*[60] The argument also is inconsistent with CEA's acknowledgment that a statute is necessary to make the privilege absolute, for enforcement in the courts and to prevent later modification by decree or internal regulations. Moreover, the history of the IPC undermines CEA's argument.

In 1990, a new group of practitioners, Industrial Property Attorneys, was established under French law with certain qualifications and standards proscribed. An *exception* to the new law was the Special List. At that time, the qualifications and standards applicable to the new group did not apply to the Special List.

The 1992 decree, Art. R. 422-54, imposed the obligation of professional secrecy on Industrial Property Attorneys. It contains no language limiting evidentiary privilege. It contains no language stating that it is applicable to the Special List. It is undisputed, however, that at that time, this decree did not apply to the Special List, and does not create an evidentiary privilege.

In 1997, decrees were enacted which imposed additional duties on Industrial Property Attorneys. None were directed to the Special List, and no argument has been

---

[59] As noted previously herein, the 2002 decree, Art. R. 423-1, does not impose Art. R. 422-52, Art. R. 422-53 and Art. L. 422-6, 7 and 9 on the Special List.

[60] 188 F.R.D. 189, 192 (S.D.N.Y 1999). Under the hierarchy of norms, statutes are above decrees and internal regulations and each norm must conform to the superior norms in the hierarchy.

presented that the 1997 decrees applied to the Special List.

Thereafter, in 2002, Art. R. 423-1 was enacted making the duty of professional secrecy under Art. R. 422-54 applicable to the Special List. In addition, some, but not all, of the other obligations of Industrial Property Attorneys under the IPC were imposed upon the Special List. The decree clearly indicates which duties French lawmakers intended to proscribe on each profession.

Finally, in 2004, Art. L. 422-11 was passed, which made professional secrecy absolute as an evidentiary privilege. A review of the statute shows that, similar to Art. R. 422-54, it does not mention the Special List; and it does not state that the privilege is absolute. The title of the law is only directed to Industrial Property Attorneys. In addition, two other statutes, Art. L. 422-12 and 13, dealing with independence, were enacted at the same time, and were part of Law No. 2004-130, Art. 67. Neither of those statutes are directed to the Special List, and there is no suggestion that either provision applies to the Special List.

CEA's argument requires the court read into the 2004 statute an exception, the effect of which would be to modify the 2004 statute by the prior decree. The statute establishing the Special List is an exception to the 1990 provisions of the IPC. Article R. 423-1 is another exception, as evidenced by the absence of those obligations on the Special List for approximately ten years. There is no reasonable basis for the court to read into Art. L. 422-11 an exception when neither the statute itself, the title of the law nor the companion statutes, enacted on the same date, are directed to the Special List. Whenever an exception to the original 1990 law occurred relating to the Special List, a separate statute or decree was passed.

25

CEA argues that, because the type of work the Industrial Property Attorney and the Special List do are the same under Art. L. 422-1 and L. 422-5, both the obligation of professional secrecy and the absolute privilege have to be the same. However, that argument does not address that there are additional duties under the IPC, as discussed previously herein, that apply to the Industrial Property Attorney. No explanation by CEA regarding the differences in the duties between the two professions has ever been provided.

CEA contends that because the 2004 law or language of Art. L. 422-11 did not specifically exclude the Special List, then that group was automatically included. Again that conclusory argument does not explain the additional obligations imposed in the 2004 law upon Industrial Property Attorneys.[61] CEA has never suggested that Art. L. 422-12 and L. 422-13 apply to the Special List. Rather, CEA has suggested those statutes do not since independence is irrelevant to the Special List.

Similarly, CEA's argument that by not applying Art. L. 422-11 to the Special List operates to repeal by implication the 2002 decree (Art. R. 423-1) is not supported. A finding that Art. L. 422-11 (the evidentiary privilege) applies to Industrial Property Attorneys and not the Special List does not eliminate the obligation of secrecy, liability insurance or disciplinary measures for the Special List under the 2002 decree. No evidence, including the additional affidavits and other materials submitted by CEA on review of the Special Master's opinion, indicate that Art. R. 423-1 was directed to or dealt with Industrial Property Attorneys. Rather, the decree only dealt with the Special

---

[61] Nor does that argument explain the different treatment between the two professions as discussed herein.

26

List.

Moreover, CEA's conclusory comments that independence is irrelevant for evidentiary privilege conflicts both with the IPC and its expert's own admissions, as previously noted. The self-serving affidavit of Garderet does not answer the issue of independence. He merely states that Brevatome is an independent firm of patent agents of which CEA is a shareholder. He fails to address the standards, including independence, imposed on Industrial Property Attorneys under the IPC at Art. L. 422-6, L 422-7, L-422-12, L. 422-13, R. 422-52 and R. 422-53 and whether those duties or similar obligations are imposed on the Special List under the IPC. The absence of any comment by CEA regarding those statutes and decrees suggest that they do not apply to the Special List, and confirms the court's interpretation of the IPC and its findings that the duties between the two professions are different.

Finally, CEA's last minute contention that decree 2004-199, which deleted language from Article 12.3 on which the *Bristol-Myers Squibb* case relied in part, somehow *ex post facto* operates to establish the evidentiary privilege is inconsistent with its arguments. *Bristol-Myers Squibb* was decided in 1999. At that time, Art. R. 423-1 did not exist. Only Art. R. 422-5, the 1992 decree first imposing professional secrecy on Industrial Property Attorneys under the IPC, existed. The *Bristol-Myers Squibb* court commented on the new class of professional that was adopted in 1990 and that "decrees would determine, *inter alia*, 'the rules of the code of professional ethics applicable to industrial property counsels.'"[62] In that vein, the court noted that

---

[62] 188 F.R.D. 189, 194 (S.D.N.Y. 1999).

27

Art. R. 422-54 provided for the National Association of Industrial Property Attorneys "'to establish its own internal bylaws,'" which lead to the adoption of Art. 12.3, an internal regulation of that professional association.[63]  It is clear that the court in *Bristol-Myers Squibb* focused on Industrial Property Attorneys in its opinion and not on the Special List.[64]  The 2004 decree removing the non-opposable language merely modifies the internal regulation of the professional association – it does not affect a law or statute because of the hierarchy of norms.  Moreover, as CEA acknowledged during oral argument, a *loi* or statute was necessary to make the attorney-client privilege absolute to prevent the right from being modified in the future by another decree or regulation and to make it enforceable in the courts.  Further, no evidence is presented that the National Society of Industrial Property Attorneys is the professional organization of which the Special List are members,  may be members, or are subject to its internal regulations, especially since Art. L. 422-9 is not a statute cited by either party as applicable to the Special List.[65]  The court has found nothing in the IPC that demonstrates this statute applies to the Special List.

Further, Art. L. 423-2, passed as part of the sweeping reform in 1990, provides that decrees in Council of State shall provide "(c) the conditions for implementing Article

---

[63] *Id.*

[64] There is no indication in the opinion that the differences/similarities between the two groups were in issue.

[65] Article L. 422-9, which was enacted in 1990, establishes the Society "in order to represent *industrial property attorneys* before the public authorities, to defend their professional interests and to ensure respect for the code of conduct."  D.I. 746, Ex. M (emphasis added).

L. 422-4; (d) the conditions for implementing Article L. 422-5;. . . (f) the code of conduct applicable to industrial property attorneys . . . ."[66] Article L. 423-2 distinguishes between the Special List and Industrial Property Attorneys by acknowledging the need for decrees to deal with separate enforcement of Art. L. 422-4 (monopoly for Industrial Property Attorneys) and L. 422-5 (exception to L. 422-4).

## Conclusion

Therefore, the court finds that CEA has failed to meet its burden to establish that the 2004 statute, Art. L. 422-11, grants evidentiary privilege to members of the Special List. Further, CEA has not proven that the participants, CEA, Brevatome and their employees, involved in the internal communications and communications between the two entities, possessed the required independence to assert evidentiary privilege. As a result, the conclusions of the Special Master on those issues are affirmed.

In light of the court's findings that evidentiary privilege for members of the Special List has not been shown, the court need not address whether Art. L. 422-11 would apply to communications before its passage. Therefore,

IT IS ORDERED and ADJUDGED that CEA's objections to the Special Master's Report and Recommendations are DENIED, and the Special Master's Report and Recommendations to the extent noted herein are AFFIRMED.

IT IS FURTHER ORDERED that CEA shall produce within seven (7) days all prosecution related documents withheld on the basis that they contain communications

---

[66] The statute also provides for "(e) the conditions under which the obligation of . . . Article 422-7 may be waived to permit *interprofessional grouping with other providers of services involved in the innovation process* . . . ." D.I. 746, Ex. M (emphasis added).

with in-house counsel and/or in-house patent engineers.  CEA shall also produce to

Samsung within seven (7) days all prosecution related documents withheld on the basis

that they contain communications with Brevatome.  The only exception to this

production are those documents addressed by the Special Master as contained in

paragraph (c) at 37 of the conclusion of his Report and Recommendations (D.I. 659).


Date: October 16, 2007          /s/ Mary Pat Thynge
                                UNITED STATES MAGISTRATE JUDGE