IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COMMISSARIAT À L'ENERGIE ATOMIQUE, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 03-484-MPT |
| SAMSUNG ELECTRONICS CO. | : CONSOLIDATED CASES |
| Defendant. | : |

**MEMORANDUM ORDER**

**INTRODUCTION**

This is a patent infringement case. On May 19, 2003 Commissariat à l'Energie Atomique ("CEA") filed a complaint against Samsung Electronics Co., Ltd. ("Samsung"), and others, for infringement of United States Patent Nos. 4,701,028 ("the '028 patent") and 4,889,412 ("the '412 patent") (collectively "the patents-in-suit").[1] The '028 patent and the '412 patent are directed to technology involving the design and manufacture of liquid crystal displays ("LCDs") and related products.[2] An LCD is a type of flat panel display that is used in products, such as, computer monitors.[3]

On October 3, 2007, the court issued its Claim Construction Memorandum Order construing certain claim terms of the patents-in-suit.[4] Currently before the court are

---

[1] D.I. 1. CEA has since filed amended complaints, but the patents-in-suit remain the same. *See* D.I. 371; D.I. 373; D.I. 379.
[2] D.I. 1 at 2.
[3] *Id.*
[4] D.I. 1076.

CEA's two motions for partial summary judgment of infringement under 35 U.S.C. § 271(a) and (b)[5] and Samsung's motion for summary judgment of non-infringement of Claims 3-5 of the '412 patent.[6] The parties' motions essentially operate as cross-motions for summary judgment regarding infringement/non-infringement.

The '028 patent was found invalid under 35 U.S.C. §112 for failure to disclose the best mode.[7] As a result, the court will not address the parties' arguments regarding infringement or non-infringement of the '028 patent. Further, Claims 1 and 2 of the '412 patent were found anticipated.[8] Therefore, the parties' contentions regarding infringement or non-infringement of those claims alone are moot.[9] The remaining claims, 3 through 5 and 12, are dependant claims.[10] This Memorandum Order addresses those claims.

**BACKGROUND**

The specific technology involved in this action and claimed in the patents-in-suit relates to vertically aligned ("VA-mode") LCD modules.[11] When an electrical voltage is applied to specific parts of a module, the molecules of the liquid crystals tilt in a

---

[5] D.I. 720, 730. D.I. 720 includes CEA's motion for infringement of Claims 1-5 and 12 of the '412 patent. In D.I. 730, direct infringement and inducement of infringement of the '412 patent is addressed.

[6] D.I. 678. Samsung argued in the alternative invalidity of Claims 3-5 of the '412 patent. The parties' arguments on invalidity are addressed in a separate memorandum order.

Samsung also moved for non-infringement of Claims 1 and 2 of the '412 patent (D.I. 697), but withdrew the motion after the court rendered its claim construction. The court considered the parties' briefing on that motion in the present decision.

[7] D.I. 1092.

[8] D.I. 1093.

[9] Claim 2 is dependent from Claim 1.

[10] Claim 3 depends from Claim 2; Claim 4 is dependent from Claim 3; Claim 5 depends from Claim 4; and Claim 12 is dependent from Claim 2. Therefore, to show whether Claims 3-5 and 12 are or are not infringed requires an element-by-element analysis of Claims 1 and 2, in addition to a similar analysis of Claims 3-5 and 12.

[11] Both the chemical structure of the liquid crystal material and the surface directly adjacent to the material affects the mode of a LCD module.

2

horizontal direction or alignment. The '028 patent claims an enhanced VA mode LCD module with a wide viewing angle resulting from compensation for birefringence.[12] The '412 patent is an improvement on the '028 patent and allows for a greater viewing angle in all azimuthal angles by using a uniaxial negative film. Under the patents-in-suit, the viewing angle for VA-mode devices is increased or widened, allowing a user to view a computer or television image at angles other than perpendicular or near perpendicular to the screen.

In its motions,[13] CEA urges that Claims 1-5 and 12 of the '412 patent are infringed, both literally and under the doctrine of equivalents. CEA relies on Dr. Terry Scheffer ("Scheffer"),[14] who compared CEA's claim construction to the structural and operational specifications of the accused Samsung LCD modules and supports his conclusions with the following evidence: 1) inspecting a disassembled Samsung LTM190E1 LCD module; 2) reviewing five representative Samsung LCD modules and classifying those modules;[15] 3) documents produced by Samsung including its responses to discovery; and, 4) deposition testimony of Samsung's technical 30(b)(6) witnesses. From his analysis, Scheffer concludes that all modules contain the same or similar strata: TAC layers; color filter side polarizer; color filter side compensation film;

---

[12] Birefringence is an inherent property of liquid crystals that reduces the contrast of an image (obscure an image on a television or computer screen, for example) when viewed at an angle.

[13] Briefing on all motions for summary judgment began in May 2006. Because Scheffer's first expert report was struck by the court after the initial briefing was completed, supplemental briefing on the infringement related motions occurred in early 2007.

[14] Scheffer, CEA's expert, is a liquid crystal display scientist. He concludes that all Samsung accused LCD modules infringe because they contain the same basic components and, except for their varying optical properties, fall into three representative categories.

[15] Scheffer's examination of the five modules involved taking measurements of the compensation films and simulations of those modules. The five sample modules are: LTM190E1-L03-DL06, LTM260W1-L02-0105, LTA320W1-L04-0004, LTA320W2-LF1-00R7 and LTM170E8-L01-LMA6.

3

glass plate, color filter; electrode; thin film transistor; glass plate; compensation film; thin film transistor polarizer; and TAC layers. Scheffer's representative classes of the accused Samsung LCD modules are: 1) two biaxial polarizer assemblies; 2) a biaxial/uniaxial or C-plate/uniaxial assembly; and, 3) an A-plate/C-plate assembly. His classification is based on their optical configurations because the claims under consideration define the optical configuration of a module.[16] Therefore, CEA maintains that Scheffer's analysis of the representative modules is reliable and proves infringement by all accused modules. As a result, CEA concludes that all Samsung's accused LCD modules contain the required elements to infringe Claims 1-5 and 12 of the '412 patent.

Samsung urges the court to reject Scheffer's analysis and classification because he has not complied with the standards for proving infringement, that is, an element-by-element analysis of *each* of the accused LCD modules. It maintains that CEA fails to prove that all accused modules infringe because the modules have different optical properties. Samsung asserts that its modules do not meet the limitation of uniaxial medium of Claim 3 (and claims 4 and 5 which depend therefrom) because they do not have an in-plane retardation "$R_o$" of zero.[17] In addition, Samsung contends that some of its modules do not meet the element of a biaxial medium under Claim 12, "wherein the

---

[16] CEA argues that the testimony of Samsung's technical expert, Dr. Allan R. Kmetz ("Kmetz") supports Scheffer's classification. When comparing Scheffer's classification with Samsung's categories, Kmetz commented "*either* classification could be used. So I don't find one preferable to the other in *that sense*." D.I. 958, Ex. 2 at 114:7 (emphasis added).

[17] The court recently construed uniaxial medium as "a type of birefringent material [film] wherein the values of two of the principal optical indices [$n_x$ and $n_y$] (called the ordinary indices) are equal to each other and the third optical index [$n_z$] (called the extraordinary index) has a different value." Therefore, where $R_o = (n_x - n_y) \cdot d$, and x and y are equal, $R_o$ is zero.

4

weakest optical index is parallel to the homeotropic direction."[18]

**STANDARD OF REVIEW**

A grant of summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[19] This standard is applicable to patent cases.[20] A Rule 56(c) movant bears the burden of establishing "that there is an absence of evidence to support the nonmoving party's case."[21] The nonmovant must be given the benefit of all justifiable inferences and the court must resolve any disputed issue of fact in favor of the nonmovant. Therefore, CEA, as the movant and patent owner, has the burden of proving infringement by a preponderance of the evidence.[22] Conversely, in support of its motion for summary judgment, Samsung must show that its modules do not meet at least one element of the claims at issue. Summary judgment is appropriate only when one conclusion regarding infringement/non-infringement could be reached by a reasonable jury.[23]

Determining whether a patent claim is infringed involves two steps.[24] First, the court must determine the scope and meaning of the asserted claim terms by rendering

---

[18] Biaxial medium has been construed by the court as "having three non-equal optical indices," [$n_x \neq n_y \neq n_z$]. In construing uniaxial medium and biaxial medium, the court accepted Samsung's proposed construction.
[19] Fed. R. Civ. P. 56(c).
[20] *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576-77 (Fed. Cir. 1989).
[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[22] *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 758 (Fed. Cir. 1984).
[23] See *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001).
[24] *Pickholtz v. Rainbow Technologies, Inc.*, 284 F.3d 1365, 1365 (Fed. Cir. 2002) (citing *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc)).

its construction of those terms.[25] This first step, claim construction, is a matter of law.[26] Second, the court must compare the properly construed claims to the accused devices to determine whether each limitation is found either literally or equivalently in the accused product.[27] This second step, the application of the construed claim to the accused product, is a fact-specific inquiry.[28]

**ANALYSIS**

In light of the prior rulings, the court's analysis begins with Claims 3 through 5 and 12 to determine whether there is a genuine issue of material fact regarding these dependant claims.

**'412 Patent, Claims 3 through 5:**

Regarding Claim 3, the parties focus on the interpretation and application of the term "uniaxial medium." CEA argues that Samsung's modules contain uniaxial films, as that term is used by Samsung's own witnesses and in its technical documents. Samsung offers that the term, properly construed, does not cover any compensation films used in its products. The parties do not address infringement of Claims 4 and 5, other than simply stating that the claims depend from Claim 3. For the analysis of the present motions only, the court will assume there is no dispute that the elements of Claims 4 and 5 cover Samsung's accused LCD modules, that is, they contain a

---

[25] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc).
[26] *Cybor Corp. v. FAS Technologies*, 138 F.3d 1448, 1454-56 (1998).
[27] *Markman*, 52 F.3d at 976.
[28] *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001) (Infringement, "whether literal or under the doctrine of equivalents, is a question of fact.").

6

compensation media that is a polymer and the polymer is a thermoplastic.[29]

Claim 3 of the '412 patent recites (with each disputed element numbered in brackets):

> A cell according to claim 2, [1] wherein the two polarizing means are crossed rectilinear polarizers and [2] wherein the compensating medium is uniaxial medium of [3] negative optical anisotropy [4] having an axis of symmetry parallel to the homeotropic direction and an extraordinary axis parallel to said axis of symmetry.

CEA relies on Scheffer's analysis and report that Samsung's modules meet the uniaxial medium limitation. CEA argues that Scheffer's application of an in-plane retardation, $R_0 = 0$, where $(n_x - n_y) \cdot d = 0$, is consistent with Kim's[30] declaration that the in-plane retardation values of Samsung's uniaxial films include ranges of under 8, under 5 or under 2, which literally include zero. CEA posits that Samsung's C-plate meets the limitation of a uniaxial compensation film because its in-plane retardation falls within ranges which include zero. CEA notes that during a presentation and in a published paper in 2004, Kim referenced the use of uniaxial films in large screen PVA LCD televisions. CEA notes that Samsung's specification sheets show uniaxial films with $R_0 = 0$, confirming those accused modules which contain C-plates, TAC films and TAC-type films meet the uniaxial limitation.

In the alternative, CEA contends that "certain films are uniaxial medium of

---

[29] Claim 4 recites "[a] cell according to claim 3, wherein the compensating medium layer is produced from a polymer material." Claim 5 recites "[a] cell according to claim 4, wherein the polymer is thermoplastic."

[30] Dr. Kyeong Hyeon Kim is Vice-President of Samsung's AMLCD Divison and is primarily responsible for Samsung's LCD technology research and development. His declaration is found at D.I. 698.

7

negative optical anisotropy in nature and have very small to no in-plane retardation $R_0$."[31] CEA emphasizes Kim's testimony that C-plates and TAC films as having "optical properties close to those of uniaxial film,"[32] and his comment that TAC films are presumed to have a small non-zero retardation value. Finally, CEA argues that limiting uniaxial medium to the technical concept of uniaxial ($n_x = n_y$) is inconsistent with the intrinsic record and would be a feasibly impossible construct. CEA relies on Kim's testimony that because of variations in manufacturing processes, suppliers can only provide a range for retardation values, which may include, but are not limited to zero.

Samsung contends that it does not use uniaxial media in its modules, and therefore, does not infringe claims 3 through 5 of the '412 patent. Samsung classifies its modules by the number of compensation films they contain (one or two) and by the type of compensation film used. Samsung's three categories are: 1) a biaxial film with an in-plane retardation of about 42 nm or higher; 2) a biaxial film with an in-plane retardation of about 80 nm or higher (an A-plate); and 3) a biaxial film with an in-plane retardation of about 2 to 8 nm (a C-plate). It maintains that none of its films have uniaxial medium.[33] Samsung does not test the films that it purchases and relies upon the in-plane retardation ranges of 2 nm to 8 nm provided by its vendors. Samsung argues that its films are made from a stretching technique which prevents uniaxial uniformity. Because a C-

---

[31] D.I. 985 at 8.
[32] D.I. 698.
[33] Samsung acknowledges that under its claim construction, a C-plate is close to being a uniaxial medium.

8

plate film's in-plane retardation is not zero ($n_x \neq n_y$), Samsung argues that there is no literal infringement.

Samsung suggests that its engineering drawings, which reference uniaxial compensation films, do not refer to films with the same properties required under the '412 patent. Although Kim's publication references "uniaxially oriented films," Samsung represents that those films were under development in 2004: it never sold the product mentioned in the article and used a biaxial film in that product. Samsung posits that there is no factual issue under the doctrine of equivalents, because under the correct construction of the term of uniaxial, its films are biaxial, which is not equivalent.

Finally, Samsung submits that summary judgment of non-infringement should be entered in its favor for all modules that do not use a C-plate.[34]

The court finds genuine issues of material fact as to whether Samsung's accused modules infringe each and every element of Claims 1-5, including whether those modules have uniaxial media, specifically in light of the court's construction of the term uniaxial medium.[35] Further, genuine issues of material fact remain as to the appropriate method of categorizing the accused modules, including which modules comprise each category, which claims are covered by the representative modules in each category and whether all elements of a claim are met by the representative modules. Although a party may not be required to

---

[34] Samsung notes that only 115 of the 440 accused modules have a C-plate.
[35] D.I. 1076. "A type of birefringent material wherein the values of two of the principal optical indices (called the ordinary indices) are equal to each other and the third optical index (called the extraordinary index) has a different value."

9

reverse engineer every module, the party must specify which modules are representative of a particular series or group, why they are representative and how their particular properties or components directly infringe each and every element of a claim.[36]

*Cryovac Inc.*, a case relied upon by CEA, is distinguishable from the present matter. There, this court determined that a group of twenty-six different product specifications, categorized into four composition combinations, shared the same infringing composition for the outer surface and outer sealant layers. Because the same infringing element was shown to exist in all twenty-six products, with only minor differences among the four categories, the court found literal infringement by analyzing the properties of the categories by the specifications of the products in each grouping.[37]

In the instant matter, CEA has not met its burden that the accused modules contain a uniaxial medium. Regarding Samsung's motion for summary judgment, there is technical information, including publications and specifications (polarizer cutting sheets) where Samsung engineers document films with uniaxial characteristics. The parties' evidence is insufficient for the court to grant summary judgment to either on literal infringement.

Regarding the doctrine of equivalents as to Claims 3 through 5, the court takes a different view. CEA's arguments focus exclusively on how Samsung's modules directly infringe. In the briefing on its motions and in response to

---

[36] *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346 (D. Del. 2006).
[37] *Id.* at 354-55.

10

Samsung's motion, CEA merely alleges that every claim limitation under Claims 3-5 is met under the doctrine of equivalents, citing *Envirotech Corp. v. Al George, Inc.*[38] No element analysis is done. Conclusory statements are the extent of CEA's equivalence analysis. The Federal Circuit has summarized the burden of establishing infringement under the doctrine of equivalents, stating that:

> [A] patentee must . . . provide particularized testimony and linking argument as to the "insubstantiality of the differences" between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents. Such evidence must be presented on a limitation-by-limitation basis. Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.[39]

Further, "[i]n order to prevent the doctrine from expanding a patent's protection beyond the scope of its claims, the Federal Circuit has warned that the application of the doctrine of equivalents should be 'the exception . . . [and] not the rule' in patent infringement actions."[40] Therefore, "the evidentiary requirements necessary to prove infringement under the doctrine of equivalents [include] . . . the need to prove equivalency on a limitation-by-limitation basis . . . [and] requir[es] equivalency to be proven with particularized testimony and linking argument."[41] A plaintiff asserting infringement under the doctrine of equivalents "must present *evidence* and *argument* concerning the doctrine and

---

[38] 730 F.2d 753, 758 (Fed. Cir. 1984).
[39] *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991).
[40] *nCube Corp. v. Seachange International, Inc.*, 313 F. Supp. 2d 361, 377 (D. Del. 2004) (quoting *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991).
[41] *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed. Cir. 1996) (citations and internal quotations omitted).

11

*each* of its *elements* . . . . The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement . . . . Accordingly, the fact there was evidence and argument of literal infringement, that may also bear on equivalence," is insufficient to demonstrate infringement under the doctrine of equivalents.[42]

CEA contends that Scheffer applied the doctrine of equivalents to analyze the components in Samsung's products. CEA suggests that his conclusions are admissible because his knowledge of the equivalents methodology alone is sufficient to support them. There is no appropriate analysis to support that conclusion: no particularized testimony or linking argument of the function, way, result test on a limitation-by-limitation basis. Therefore, CEA's conclusory statements that Samsung infringes under the doctrine of equivalents, are insufficient as a matter of law.

Further, in light of the court's claim construction of uniaxial medium, the doctrine of equivalents is not available under the "all elements rule." The application of this doctrine is a question of law.[43] Under the all elements rule, "the doctrine of equivalents does not apply if applying the doctrine would vitiate an entire claim limitation."[44] In the '412 patent, the distinctions between the claims and what they cover are: Claim 1, a broad independent claim covering

---

[42] *Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan, Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989) (citations omitted) (emphasis in original).

[43] *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003).

[44] *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (holding that unmounted is not equivalent to mounted and to so determine "would effectively read the 'mounted on' limitation out of the patent").

12

both a uniaxial or biaxial compensating medium; Claim 3, a dependent claim covering a uniaxial compensating medium; and Claim 12, a dependent claim covering a biaxial compensating medium. As acknowledged by Scheffer, a compensating medium is either uniaxial or biaxial and cannot be both. The scope of Claim 3 cannot include both uniaxial and biaxial media. Application of the doctrine of equivalents would operate to expand the scope of Claim 3 and impermissibly vitiate the uniaxial limitation that distinguishes it from Claims 1 and 12.[45] The doctrine of equivalents cannot be applied to the claim term "uniaxial medium." Therefore, Samsung's motion for non-infringement of Claims 3 through 5 under the doctrine of equivalents is granted.

**'412 Patent, Claim 12**

Claim 12 of the '412 patent recites (with each element numbered in brackets):

> A cell according to claim 2, [1] wherein the two polarizing means are crossed rectilinear polarizers, [2] wherein the compensating medium layer is a biaxial medium, and [3] wherein said weak index is parallel to the homeotropic direction.

The only term in dispute in claim construction was "biaxial medium." The court construed that limitation as: "a type of birefringent material having three unequal principal optical indices."

---

[45] See Seachange Int'l, Inc. v. C-Cor, Inc., 413 F.3d 1361, 1378 (Fed. Cir. 2005) (The Federal Circuit found that to accept Seachange's equivalents theory would require equating "indirect" with the claim term "direct" and would vitiate that claim limitation. "[T]herefore, [Seachange's argument] must fail as a matter of law.").

13

CEA, relying on Scheffer,[46] argues that the n-TAC film, the A-Type film, the VAC film, the Zeonor Type film, the Z-Type film and the X-Plate used in Samsung's LCD modules meet the biaxial medium limitation of and infringe claim 12. Scheffer's report explains that Samsung's polarizer cutting sheets provide the configuration and optical properties of its polarizers. Since those specifications demonstrate $R_{th}$ values larger than $R_0$ for various compensation films, Scheffer concludes that the weakest optical axis for those films are in the homeotropic direction

Samsung argues that Scheffer's findings are baseless because he only skimmed the relevant technical specifications before arriving at his infringement conclusions. Samsung also disputes that the evidence demonstrates that the weak index of its biaxial "compensating medium layer" is parallel to the homeotropic direction. Samsung emphasizes Scheffer's deposition where he identifies a particular film in which $n_y = n_z$, and therefore, $n_z$ does not have the smallest index of refraction.

There are disputed material facts concerning the elements of Claim 12. Scheffer recognizes that representative modules have many of the same basic characteristics, but differ from module class to module class by their optical configurations. Samsung

---

[46] Scheffer references Samsung Bates numbers 36 - 45, 59635, and 58391 as evidence of infringement of Claim 12. He also relies on the testimony of Samsung's 30(b)(6) witness "Lee Tr., at 250 - 251." No direction is given of where those materials may be found in the thousands of pages submitted in this matter. Minimal information on how Scheffer applied those references is provided. No date or D.I. or exhibit number is given for the deposition of witness "Lee." There is insufficient reasoning of why the documents or deposition are relevant. The reference to Samsung's polarizer cutting sheet recipes, SAM 36 - 45, eventually located in the sea of paper, offers no guidance as to which modules examined used the cited recipes, or whether the films, in combination with the other layers of the modules, read on Claims 1, 2 and 12. Even if a representative module infringes Claim 12, based on the evidence provided, the court cannot conclude that any particular class or group of modules infringe. "While the Court may have a duty independently to review significant portions of the record when passing on a summary judgment motion, the Court does not have an obligation to ferret out and review documents whose importance has not in some intelligible way been demonstrated . . . ." *Outboard Marine Corp. v. Pezetel*, 1984 WL 2940, *6 (D. Del. Jan. 26, 1984).

14

argues that there are at least 440 accused modules, and within those modules, there are dozens of polarizer/compensation film combinations with unique optical properties and characteristics. Even when identified under a specific product code, not all of the modules of a particular code contain the same polarizer/compensation film combination. CEA has not shown by a preponderance of the evidence that Scheffer's categorization of the accused modules is accurate and if so, whether the modules thus characterized infringe.

### Inducement

35 U.S.C. § 271(b) provides that whoever actively induces infringement of a patent shall be liable as an infringer. To establish inducement, the claimant must show: 1) that a direct infringement has occurred; and 2) that the accused infringer knowingly induced infringement or had the requisite intent.[47] Mere knowledge of potential or actual infringement is not enough. Liability for inducement is premised on purposeful, culpable expression and conduct.[48] "Proof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement."[49] "Intent is a factual determination particularly within the province of the trier of fact."[50]

The court has previously determined herein that there is a question of fact on direct infringement and could deny the motion on that basis alone. Regardless of that basis to deny CEA's motion, there is also a question of material fact on the second

---

[47] See Insituform Techs., Inc. v. CAT Contracting, Inc., 385 F.3d 1360, 1378 (Fed. Cir. 2004) (citing Water Techs. Corp. v. Calco, Ltd., 850 F.2d 660, 668 (Fed. Cir. 1988)); see also Fuji Photo Film Co., Ltd. v. Jazz Photo Corp., 394 F.3d 1368, 1377 (Fed. Cir. 2005).
[48] See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005).
[49] Hewlett-Packard Co. v. Bausch & Lomb Inc., 909 F.2d 1464, 1469 (Fed. Cir. 1990).
[50] Fuji Photo Film Co., Ltd. v. Jazz Photo Corp., 394 F.3d 1368, 1378 (Fed. Cir. 2005) (citing Allen Organ Co. v. Kimball Int'l, Inc., 839 F.2d 1556, 1567 (Fed. Cir. 1988)).

prong for inducement of infringement.

CEA argues that Samsung undertakes extensive efforts to encourage third parties to import, sell and offer for sale infringing VA-mode LCD products. CEA claims that Dell and HP directly infringe the patents-in-suit as evidenced by their admissions that they imported and sold Samsung VA-mode modules or products incorporating those modules. CEA maintains that Samsung targets companies and individual consumers by promoting VA-mode products through market publications and advertisements. It contends that Samsung actively induces infringement through technical and product support to its customers. CEA relies on Samsung's indemnification agreements with its resellers for potential litigation costs arising from the sale of its modules as further evidence of inducement.[51]

CEA posits that sales of Samsung modules in the United States by Dell, HP and IBM are evidence of inducement. Finally, CEA notes Samsung's attempt in May 2000 to obtain an exclusive license to the patents-in-suit, as evidence of the requisite intent because it knew of the patents.

Samsung explains that companies, like HP, purchase LCD monitors from BenQ in Korea. Samsung makes LCD modules in Korea which it sells to BenQ in Korea.[52] Under that scenario, it cannot be assumed that Samsung is the only module supplier to BenQ; all HP monitors are purchased from BenQ; all monitors bought by HP from BenQ

---

[51] An indemnification agreement "will generally not establish an intent to induce infringement, but such intent can be inferred when the primary purpose is to overcome the deterrent effect that the patent laws have on would-be infringers." *Hewlett-Packard v. Baush & Lomb Inc.*, 909 F.2d 1464, 1470 (Fed. Cir. 1990). CEA has not shown that a standard term and condition in Samsung's sales contract had that purpose.

[52] Samsung also sells its Korean-made modules to Dell in Singapore.

contain the accused modules; or whether any products made by BenQ for HP are imported to the United States. Samsung denies knowing who the end users are, and therefore cannot induce infringement. Although Samsung marketed certain products with Dell, it maintains that such evidence does not prove a coordinated marketing effort to sell LCD modules, or intent to cause infringement.[53]

Because Samsung knew of the patents, sold VA LCD modules directly in the United States, and promoted sales in this country through third parties, CEA posits that Samsung directly infringed and induced infringement. CEA relies on *Golden Blount, Inc. v. Robert H. Peterson Co.*, as supporting that Samsung had the requisite level of intent for inducement.[54] In that case, the defendant's intent to cause infringement was found because it packaged an instruction sheet with kits which enabled customers to assemble an infringing apparatus. In the instant matter, Samsung's knowledge of the patents and its sales and promotion of VA-LCD modules, do not lead to the same conclusion. Proof of inducement requires a two step process: direct infringement and knowingly induced infringement or the requisite intent. CEA has not satisfied either prong to prove inducement.

Intent is a factual determination within the province of the jury. CEA offers

---

[53] Samsung asks for fees and costs incurred to respond to CEA's supplemental briefing on inducement because that briefing was initiated without leave of the court. The court reserves judgment on Samsung's request.

[54] 438 F.3d 1354 (Fed. Cir. 2006). CEA contends that *Golden Blount* recognizes a "lack of clarity" concerning the required intent to prove inducement. The concern in *Golden Blount*, however, was "whether the required intent must be merely to induce the specific acts [of infringement] or additionally to cause an infringement." *Id.* at 1365. *See Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir.1990) ("[P]roof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement."); *see also Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir.1990) ("The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements.").

17

insufficient evidence that Samsung knew that it was infringing or knew that promotion and sale of its products was inducing others to infringe.

> [I]f an entity offers a product with the object of promoting its use to infringe, as shown by clear expression or other affirmative steps taken to foster infringement, it is then liable for the resulting acts of infringement by third parties. "The inducement rule . . . premises liability on purposeful, culpable expression and conduct . . . ."[55]

No direct evidence of Samsung's culpable and purposeful intent to actively encourage infringement is proffered. Although intent may be proven by circumstantial evidence,[56] when a plaintiff introduces circumstantial evidence that allows for inferences to be drawn, it is "up to the Jury to decide whether or not to draw any inference and to consider the weight of any such evidence."[57]

CEA's motion for summary judgment of direct infringement and inducement of infringement is denied.

## CONCLUSION

For the reasons contained herein,

IT IS ORDERED and ADJUDGED that:

1. CEA's motion for partial summary judgment of infringement under 35 U.S.C. § 271(a) (D.I. 730) is DENIED.

2. CEA's motion for partial summary judgment on the issues of direct infringement and inducement to infringe (D.I. 720) is DENIED.

3. Samsung's motion for summary judgment of non-infringement of

---

[55] *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)).

[56] *DSU Medical Corp.*, 471 F.3d at 1306. ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.")

[57] *Id.*

18

claims 3-5 of the '412 patent (D.I. 678) is DENIED as to literal infringement and GRANTED as to the doctrine of equivalents.

November 2, 2007

UNITED STATES MAGISTRATE JUDGE